IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

IN RE RULE 45 SUBPOENA ISSUED TO
CHARTER COMMUNICATIONS, INC. DATED JULY 23, 2020

---

**NOTICE OF MOTION AND MOTION OF JOHN DOE MOVANT TO QUASH
SUBPOENA ISSUED TO CHARTER COMMUNICATIONS, INC.**

---

Pursuant to Federal Rule of Civil Procedure 45(d), movant John Doe[1] hereby moves to quash the subpoena issued to Charter Communications, Inc. ("Charter"), dated July 23, 2020 (the "Subpoena").  A copy of the Subpoena is attached as Exhibit C to the Declaration of Avi Weitzman in Support of Doe's Motion to Quash ("Weitzman Decl."), filed concurrently herewith.

The Subpoena unquestionably violates Doe's First Amendment rights to speak freely and anonymously.  Doe exercised those rights by sending pseudonymous e-mails to select customers of Spider Labs, Ltd. ("Spider Labs"), a Japanese corporation that sells cybersecurity software that purports to prevent digital advertising fraud ("Ad Fraud").  In those e-mails, Doe informed Spider Labs's customers of Doe's opinions regarding the company's false accreditation and inadequate technology, and requested a quote for an article Doe was preparing to publish.  In an effort to chill Doe's exercise of free speech rights, Plaintiff has now filed a lawsuit against Doe in the Southern District of New York, captioned *Spider Labs, Ltd. v. Doe*, No. 20-5457 (S.D.N.Y. filed July 16, 2020).  Through that lawsuit, Plaintiff issued the Subpoena, which asks Charter to disclose personal identifying information regarding Doe, in an effort to discover Doe's identity.  This is

---

[1]   John Doe has used a pseudonym, "Jeff Katzenberg," in relevant communications.  We refer to our client as John Doe in this Motion to preserve the movant's anonymity.

precisely the harm that led Doe to speak anonymously in the first instance. This Subpoena directly undermines Doe's First Amendment right to speak freely and anonymously about matters of public concern. Accordingly, this Court should quash the Subpoena.

This Motion is based upon this Notice of Motion and Motion to Quash, the accompanying declaration of Avi Weitzman and the exhibits attached thereto, and other matters and argument that the Court may consider. In particular, because Plaintiff's counsel did not provide a copy of all the Subpoenas until August 11—three days before the purported subpoena return date of August 14—Doe has not had a reasonable opportunity to prepare a full memorandum of points and authorities and evidentiary submission to support the Motion. Doe submits this Motion to put Plaintiff and the subpoenaed third parties on notice of Doe's objections to the Subpoenas, and without waiver of any of Doe's arguments and opportunity to submit a memorandum of points and authorities, evidence, and other materials at an appropriate time and in accordance with a reasonable briefing schedule that this Court may set.

\* \* \*

Federal Rule of Civil Procedure 45 authorizes this Court to quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).[2] Because the subpoenaed records are related to accounts that are owned or used by Doe, Doe is the "person who possesses the right" and therefore has standing to file this Motion to protect those rights. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *see also, e.g.*, *Voltage Pictures, LLC v. Does 1–22*, No. 13-1121-WYD-MEH, 2013 WL 4028587, at \*2 (D. Colo. Aug. 7, 2013) (anonymous speaker has right to move to quash subpoena that sought to unmask speaker's identity when asserting First Amendment right to privacy and

---

[2] Because the Subpoena designates a place of compliance in Denver, Colorado, venue in this judicial district for this Motion to Quash is proper. *See* Fed. R. Civ. P. 45(d)(3).

anonymity); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*, No. 13-cv-307-WYD-MEH, 2013 WL 3753436, at *3 (D. Colo. July 14, 2013) (same).

Plaintiff served the Subpoena in connection with its underlying lawsuit against Doe, which asserts claims for (i) defamation *per se* under New York law, (ii) tortious interference with prospective economic advantage, (iii) tortious interference with a contractual relationship, and (iv) injunctive relief based on Doe's exercise of the constitutional right to free speech. In that lawsuit, Plaintiff alleges that Doe registered a domain, www.FightClickFraud.com, in February 2020, and that months later, in mid-June 2020, Doe sent pseudonymous e-mails (using the name "Jeff Katzenberg") to certain of Plaintiff's publicly advertised customers. (*See* Weitzman Decl., Ex. A ¶¶ 13–26.)

As the communications referenced by Plaintiff's complaint show, these e-mails introduced Doe as the owner of a "new blog about preventing ad fraud" (i.e., www.FightClickFraud.com), who was preparing an article about Spider Labs' purported anti-Ad Fraud technology. (Weitzman Decl., Ex. B.) In the e-mails, Doe stated that Doe "believe[s] [Spider Labs] might have committed fraud against you" because Spider Labs falsely "tell[s] customers that they are . . . accredited" by the Media Rating Council ("MRC"), and Doe further challenged the efficacy of Spider Labs' supposed "artificial intelligence based" anti-fraud technology. (*Id.*) Doe further stated that engineers tested Spider Labs' technology and "discovered there's nothing behind their platform" and that "it couldn't detect fraud." (*Id.*) Doe then asked the customer "whether or not" they knew that Spider Labs was not "actually MRC accredited even though they claim they are," and inquired whether the customer would provide a quote for the anticipated article. (*Id.*)

Because Doe used a pseudonym to communicate with Spider Labs' customers, Plaintiff is pursuing expedited discovery through this Subpoena and others to uncover Doe's true identity.

The Subpoena directs Charter to produce "all Identifying Information" regarding Doe, including names, addresses, e-mail accounts, location information, IP addresses and IP logs. (*See* Weitzman Decl., Ex. C.)[3]

After receiving a notice of subpoena from one of the subpoenaed third parties on July 31, 2020, Doe, through undersigned counsel, communicated with Plaintiff's counsel on multiple occasions to request a copy of the subpoenas Plaintiff had served, so that Doe could have a reasonable opportunity to object to the Subpoena, but Plaintiff's counsel refused. (Weitzman Decl. ¶¶ 6–7.) Plaintiff's counsel ultimately relented on August 11—a mere three days before the purported subpoena compliance date of August 14—and provided undersigned counsel with a copy of the Subpoena to Charter and three other service providers outside this District. (*Id.* ¶ 8.) Since receiving a copy of the subpoenas, Doe's counsel promptly notified Charter of Doe's intent to object to the subpoenas, and requested that Charter defer any production of responsive materials until the Court has resolved Doe's objections. (*Id.* ¶ 10.) In light of the upcoming August 14 subpoena response date, Doe files this Motion to lodge Doe's objections to the Subpoena, to put Charter and Plaintiff on notice of Doe's objections, and to request that this Court issue a ruling on the lawfulness of the Subpoena in light of Doe's constitutional rights under the First Amendment to the United States Constitution. (*Id.* ¶ 11.) Given the impending August 14 return date, Doe intends to supplement this Motion with additional materials, including a memorandum of points and authorities and supplemental declarations and exhibits, in support thereof. (*Id.* ¶ 12.)

As will be explained more fully in Doe's forthcoming memorandum of points and authorities and other supporting materials, the Subpoena must be quashed because it violates Doe's

---

[3]  Notwithstanding the Subpoena's definition of "Identifying Information," Doe also objects to the extent the Subpoena calls for the production of the contents of Doe's electronic communications, in violation of the Stored Communications Act. *See* 18 U.S.C. § 2702(a).

4

constitutional right to engage in anonymous speech by gathering information to publish a blog, www.FightClickFraud.com, on the issue of Ad Fraud.  It is well established that the First Amendment protects the right of an individual to engage in anonymous speech.  *See, e.g.*, *McIntyre v. Ohio Elecs. Comm'n*, 514 U.S. 334, 341 (1995).  As both the Supreme Court and Tenth Circuit have recognized, anonymity is entitled to the same constitutional protections when involving speech on the Internet, including in private e-mails like the ones at issue in this case.  *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("[O]ur cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to [speech on the Internet]."); *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) ("First Amendment protections for speech extend fully to communications made through the medium of the internet.").[4]

Because the Subpoena implicates significant First Amendment considerations, this Court must apply a balancing test to determine whether Plaintiff has met its burden to use this Court's discovery power to unmask Doe's identity.  *See Faconnable USA Corp. v. John Does 1–10*, No. 11-941-CMA-BNB, 2011 WL 2015515, at *2 (D. Colo. May 24, 2011) ("[C]ourts have outlined strict rules for allowing a subpoena that has the effect of unmasking the identity of anonymous online speakers." (quoting *Koch Indus., Inc. v. John Does 1–25*, No. 10-1275, 2011 WL 1775765,

---

[4]  Plaintiff's counsel has suggested in correspondence with undersigned counsel that the e-mails Doe wrote are not entitled to constitutional protection under the commercial speech doctrine.  That is risible.  While Doe's e-mails concerned a corporation's commercial offerings, it was not "commercial speech."  Even if speech is "arguably motivated by profit . . . , that in itself is insufficient to characterize the [speech] as commercial."  *U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1207 (D. Colo. 2001) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 (1983)).  To the contrary, as long as the speech is not solely made to propose a commercial transaction, the speech is reviewed under the "test for fully protected expression"—particularly where the speech is "inextricably intertwined" with non-commercial elements.  *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796 (1988); *see also Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 762 (1976) (standard for determining commercial speech is whether speech "does no more than propose a commercial transaction, is so removed from any exposition of ideas, and from truth, science, morality, and arts in general, . . . that it lacks all protection" (internal quotation marks and citation omitted)).

at *10 (D. Utah May 9, 2011))), *vacated as moot on other grounds*, 799 F. Supp. 2d 1202.  As courts in the Tenth Circuit have recognized, "the case law has begun to coalesce" towards heightened standard, under which "[i]n addition to establishing that its action can withstanding a motion to dismiss . . . , the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant."  *Koch Indus.*, 2011 WL 1775765, at *10 (citing *Dendrite v. Doe*, 775 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001); *Doe v. Cahill*, 884 A.2d 451, 461 (Del. 2005)) (internal quotation marks and citation omitted).  Under this line of cases, a plaintiff must submit "sufficient evidence to establish a *prima facie* case for each essential element" of its claim that would survive a hypothetical motion for summary judgment.  *Cahill*, 884 A.2d at 460, 463.  Plaintiff has not—and cannot—meet its burden.

As Doe will explain in greater detail in its forthcoming memorandum of points and authorities, Plaintiff's lawsuit does not plead any viable claims, supported by a sufficient evidentiary basis, that can survive Doe's affirmative defenses, including based on the exercise of the First Amendment right to speak anonymously.

Plaintiff has utterly failed to bring a viable claim for "Defamation Per Se" for multiple reasons.  As an initial matter, Plaintiff has not satisfied its burden to plead facts that would establish the falsity of the alleged statements.[5]  *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244 & n.6 (2d Cir. 2017) (because falsity has to be plausibly pleaded, conclusory allegations of falsity are insufficient).  But even setting aside fatal pleading defects, the defamation

---

[5]   Given that the complaint cannot even survive the pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it is inconceivable that Plaintiff can make the heightened evidentiary showing that is necessary when a subpoena "seek[s] to strip speakers of their First Amendment right to anonymity." *Koch Indus.*, 2011 WL 1775765, at *10 (citing *Dendrite*, 775 A.2d at 760; *Cahill*, 884 A.2d at 461).

claim fundamentally fails because the underlying e-mail speech at issue consists only of nonactionable opinions regarding what Doe "believe[d]" about the subjective quality of Plaintiff's commercial offerings and services, and thus are not and cannot be defamatory. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-442, 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016) (finding that pseudonymous Internet postings describing service as "slow" and noting that "plaintiff's employees were rude" are "largely matters of opinion" and not "actionable as false statements of fact"); *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 516–17 (S.D.N.Y. 2017) (statement that the plaintiff-attorney was "unresponsive" to her clients was nonactionable opinion because the word has "no objectively discernible meaning"); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 155 (1993) ("[A]ssertions that a person is guilty of . . . 'fraud'" may be "nonactionable").

Furthermore, to the extent Doe's e-mails contained statements of fact at all, the record will establish that those statements are substantially true and were expressed by Doe only after Doe had conducted a reasonable inquiry and formed a good faith belief as to their truthfulness. *See Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. Sup. Ct. 1999) (plaintiff must show "fault as judged by, at a minimum, a negligence standard" to succeed on defamation claim). Indeed, the evidence will show that a central focus of Doe's e-mails was to expose misrepresentations that Plaintiff published in a press release regarding, among other things, its MRC industry accreditation—misrepresentations that Spider Labs was forced to acknowledge publicly mere days later as a result of Doe's e-mails—and to gather information for use in a blog article that Doe was preparing to publish.

Moreover, because Doe's speech involved matters of public concern about Plaintiff, a limited public figure in the Ad Fraud detection industry, Plaintiff must meet the heightened burden

of showing that Doe acted with "actual malice," *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964), and in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties," *Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975).  In particular, Doe's e-mails address the issue of truth in advertising and cast light on the integrity of marketing and certification practices in the Ad Fraud industry, all of which unquestionably raise important matters of public concern. Additionally, as a business that holds itself out to be a "leading provider of anti-Ad Fraud services" with a "reputation as the provider of cutting-edge anti-Ad Fraud services" (Weitzman Decl., Ex. A ¶¶ 10, 37, 45), Plaintiff has injected itself into the public discourse as a limited public figure in this industry, which subjects Plaintiff's defamation claim to the constitutional actual malice standard.  *See Romeo & Juliette*, 2016 WL 815205, at *9 (treating business as a limited-purpose public figure for purposes of defamation with respect to reviews of its services).  Plaintiff's complaint, however, has not even attempted to plausibly allege that Doe acted with "actual malice."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 283 (S.D.N.Y. 2013) (dismissing defamation claim because "allegation of actual malice lacks plausibility").  Plaintiff therefore cannot satisfy its burden of adducing sufficient evidence to establish that Doe acted with "actual malice" or in a "grossly irresponsible manner."

As to Plaintiff's claims for tortious interference and injunctive relief, those claims are premised on a finding of defamatory speech and necessarily fail because, among other reasons, the alleged interference was based solely on Doe's privileged First Amendment speech.  *See Hotel St. George Assocs. v. Morgenstern*, 819 F. Supp. 310, 320 (S.D.N.Y. 1993) (statements privileged under the First Amendment "cannot form the basis of a claim for tortious interference with business interests"); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-7568, 2018 WL

847014, at *9 (S.D.N.Y. Jan. 12, 2018) ("First Amendment bar[s] claims for . . . tortious interference based on defendants' non-defamatory speech." (citation omitted)).  Furthermore, Plaintiff's complaint has not identified any existing or prospective business or contractual relationship that was harmed by Doe's speech.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010) (dismissing tortious interference claim where complaint failed "to describe any third party with whom [plaintiff] had prospective business relations to be interfered with").

*   *   *   *   *

Because Doe's speech is fully protected by the First Amendment and because Plaintiff cannot establish that it has any viable claim, the Court should quash the Subpoena.  Additionally, pursuant to Federal Rule of Civil Procedure 45(d)(1), the Court should award reasonable attorney's fees and costs that Doe incurred in bringing this Motion to Quash.  *See, e.g.*, *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347, 2010 WL 2219343, at *12 (E.D.N.Y. Feb. 5, 2010) (awarding attorney's fees against plaintiff who caused anonymous speaker to "expend significant time and resources to protect his anonymity").  To ensure the Court has a full opportunity to review the relevant legal arguments and supporting evidence, counsel for Doe respectfully requests leave to file, within a reasonable time, a memorandum of points and authorities (including additional materials and evidence) in support of this Motion to Quash, and for the Court to set an appropriate briefing schedule.

Respectfully submitted,

s/ Robert C. Blume
Robert C. Blume
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:     (303) 298-5700
E-mail:            rblume@gibsondunn.com

Mitchell A. Karlan
   (application for admission forthcoming)
Avi Weitzman
   (application for admission forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York NY  10166-0193
Telephone:     (212) 351-4000
E-mail:            mkarlan@gibsondunn.com
                      aweitzman@gibsondunn.com

*Attorneys for Movant John Doe*